**STATE of Minnesota, Respondent,**

v.

**Michael NEWCOMBE, Appellant.**

**No. C0-87-605.**

Court of Appeals of Minnesota.

Sept. 22, 1987.

Review Denied Nov. 13, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Steven H. Alpert, Rice Co. Atty., Faribault, for respondent.

C. Paul Jones, State Public Defender, James M. Burseth, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by RANDALL, P.J., and CRIPPEN and MULALLY *, JJ., with oral argument waived.

## OPINION

MULALLY, Judge.

This is an appeal from a conviction for aggravated robbery following a plea of guilty entered pursuant to a plea agreement under *State v. Goulette*, 258 N.W.2d 758 (Minn.1977) (allowing guilty plea by defendant maintaining his innocence).

## FACTS

Appellant Michael Newcombe was charged with aggravated robbery and receiving stolen property following the robbery of a gas station in Faribault on February 9, 1986. Newcombe admitted he was present at the gas station when his companion, Tim Johnson, pulled a gun on the attendant, obtaining over $1100 in cash. He maintained, however, that he was not aware that Johnson intended any criminal act until he actually saw Johnson pull out the weapon. Newcombe claimed he had entered the station only to use the bathroom. He admitted taking some of the stolen cash after the robbery and buying drugs, some of which he consumed; therefore, he did not deny his guilt of receiving stolen property under the statute. Minn. Stat. § 609.53, subd. 1(1) (1984).

Newcombe's guilty plea was taken on December 1, 1986, the day trial was set on the aggravated robbery charge. Newcombe conceded that the gas station attendant's testimony would have been that he did not go into the bathroom and come out but was "walking around the [store] area" with Johnson when Johnson pulled the gun. He was aware that his neighbors in his mobile home park would testify that he and Johnson came over to their home before the robbery, discussed the robbery and asked them for a ride. Newcombe admitted the pellet gun used in the robbery belonged to him, but claimed Johnson took it intending to buy it later. He admitted wearing a stocking cap with eyeholes cut out by Johnson into the gas station, but claimed he did so only because it was very cold out. He conceded that Johnson got over $1100 in the robbery, and brought it back to Newcombe's mobile home, and that he (Newcombe) then agreed to buy drugs for Johnson with the money, and proceeded

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

to do so, using $390 of the money, and taking some of the drugs for his own use.

The written plea agreement provided that Newcombe would enter a *Goulette* plea to the aggravated robbery, and the prosecutor would recommend a Guidelines presumptive sentence of 97 months. The prosecutor would dismiss other charges pending against Newcombe in Rice County, or which the county attorney had under consideration, including the receiving stolen property charge, tampering with a witness, conspiracy to commit assault and to escape, possible additional conspiracy charges, and a possible perjury charge. The county attorney would also send a "strong written recommendation" to the department of corrections that Newcombe not be sent to Stillwater or Oak Park Heights due to threats received from inmates there. The agreement provided no guarantee Newcombe would not be sent to either institution, and further provided that Newcombe would not be able to withdraw his plea if corrections decided to send him either place.

The plea agreement was presented on the record and Newcombe was extensively questioned concerning his plea.[1] The court noted that Newcombe had at one point sought the removal of his attorney, and elicited his statement he was satisfied with his representation. The court also noted that on a defense motion Newcombe had been evaluated under Minn.R.Crim.P. 20.01 for his mental competency to proceed to trial, and the record reflects a finding of competence to proceed to trial.

The trial court discussed with Newcombe his Rule 15 petition to plead guilty. In discussing the maximum penalty for the offense, the court noted its power to double the Guidelines sentence, but "chances are I'm going to go along with the recommendation" for a presumptive sentence. Newcombe acknowledged that "the factors are against me if I take it to trial." Newcombe had a criminal history score of 6, but had never gone to trial before.

Newcombe, while acknowledging the "factors" were against him, and that his

attorney had advised him of the likelihood of conviction, maintained his innocence of the aggravated robbery charge in summarizing the facts of the incident. He stated his fear he was "dead meat" if he went to Stillwater, and that he would go to Stillwater if he didn't take the deal. He then stated: "I'm praying to God I can appeal this on a Goulette plea."

The trial court attempted to explain to Newcombe that even a reversal on appeal would only get him back to the trial court for trial, including trial on the dismissed charges. Newcombe stated he understood that if the evidence was presented to a jury he would be convicted. The trial court explained to him he had a right to appeal from the conviction based on his guilty plea, but that such an appeal would probably be a waste of time. Newcombe stated he understood that. The court then went over the facts of the incident.

When the county attorney questioned Newcombe, he went over the other charges, or possible charges, which would be dismissed under the agreement. Newcombe admitted he had discussed with his attorney the amount of time he could receive on the other charges and that it was "[m]ore than this deal, yes." The county attorney then went over the recommendation against serving time in Stillwater and Oak Park Heights, and stated:

Q All right. I don't want you to plead guilty today because you are so afraid of your life, if you're found guilty you are going to go to Stillwater—

A That's why I'm pleading guilty.

Q If that's the only reason you're pleading guilty today then I don't think you should plead guilty today.

A Because Steve, here's where it's at with that, what you're saying there; I'm pleading guilty under that factor because if I don't * * * I go to trial, all these different cases—say the first charge I go to Court for, I get found guilty, I go to Stillwater, I still have to come back for four other trials.

1. The transcript of appellant's plea of guilty on December 1, 1986 consists of 94 pages.

Under questioning by his own attorney, Newcombe stated that the prospect of not going to Stillwater was his first consideration in accepting the plea agreement, but that there were other factors, including that if he was found guilty after a jury trial "I'm looking at more time than 97 months." Newcombe, however, again raised the prospect of an appeal from a Goulette plea. The trial court then questioned him on his appeal prospects, and his understanding of what relief he could expect on appeal. The court then asked:

Q　* * * What are you trying to accomplish by appealing?

A　My innocence.

Q　Pardon?

A　My innocence.

The trial court attempted again to explain to Newcombe that an appeal would only get him back to "square one."

The trial court accepted the plea of guilty, and sentenced Newcombe according to the recommendation to 97 months in prison. The sentencing transcript indicates that the department of corrections assigned Newcombe to St. Cloud Reformatory.

## ISSUES

1. Can appellant's challenge to acceptance of his guilty plea be raised on appeal rather than by post-conviction proceedings?

2. Did the trial court err in accepting appellant's *Goulette* plea?

## ANALYSIS

1. *Review by appeal*

■ The state contends Newcombe can only challenge the acceptance of his Goulette plea by a post-conviction proceeding. The state cites *State v. Hanson*, 366 N.W.2d 377 (Minn.Ct.App.1985), which involved a claim of ineffective assistance of counsel.

The supreme court has held a direct appeal an inappropriate means of challenging acceptance of a guilty plea only where the grounds for the challenge go outside the record on appeal. In *State v. Tamminen*,

282 Minn. 523, 162 N.W.2d 369 (1968), the court noted that the appellant's claim he was wrongfully induced to enter the plea had no support in the record of proceedings at the plea and sentencing. The court noted

the defendant asserts errors which have never been presented to or considered by the trial court. The assertions made are a collateral attack upon the judgment which should be presented, if at all, at the trial court level by petition for post-conviction relief * * *.

*Id.* at 524, 162 N.W.2d at 369.

In *State v. Coe*, 290 Minn. 537, 188 N.W.2d 421 (1971), the court found the record on appeal provided no factual support for appellant's claims of improper acceptance of the plea or ineffective assistance of counsel. The court noted appellant could establish his claims by post-conviction proceeding.

Here any problems with the acceptance of Newcombe's *Goulette* plea were thoroughly aired at the guilty plea hearing. Newcombe's desire to avoid going to Stillwater or Oak Park Heights, and the importance of that factor in his decision to plead guilty, were extensively discussed. Other inconsistencies bearing on the voluntariness of the plea were also discussed, including Newcombe's intention to appeal the conviction. Although no motion to withdraw the plea was made, the validity of the plea was clearly placed in issue at the guilty plea hearing. *Goulette* itself decided the issue of the validity of this type of plea on direct appeal from the conviction. *State v. Goulette*, 258 N.W.2d 758 (Minn. 1977).

2. *Validity of the plea*

■ The supreme court in *Goulette* stated:

Perhaps the key consideration for a trial court faced with a decision whether to accept a guilty plea is whether the plea is intelligently, knowingly, and voluntarily made. When a defendant pleads guilty but at the same time denies that he is in fact guilty, the rationality of the defend-

ant's decision is immediately called into question * * *.

258 N.W.2d at 760–61. The court also stated that the factual basis requirement is essential to a determination of whether the plea is intelligently, knowingly and voluntarily made. *Id.*

The trial court thoroughly examined the plea and thus discharged its duty under *Goulette* not to "cavalierly" accept the plea. Newcombe maintains that the plea was induced primarily by the threats of harm to him should he be assigned to Stillwater. He contends he received no real benefit other than the assignment recommendation because he pleaded to the highest charge against him, and did not face a stiffer sentence even if he was convicted on the other charges dismissed under the agreement.

While Newcombe differs with the state on the calculation of possible sentences for the other charges he faced, he concedes that he could have been sentenced to a year and a day on the conspiracy charges, which sentence could have been consecutive to his aggravated robbery sentence. Thus, even by his own calculations, he could have received some benefit from dismissal of the other charges.

Although Newcombe was unquestionably highly motivated to accept the plea agreement by his fear of serving time in Stillwater or Oak Park Heights, when questioned, he was willing to admit there were other factors, principally that his time would be limited to a 97 month sentence, and other charges would be dropped.

It is questionable whether a guilty plea motivated solely by threats of harm from inmates in a particular institution could be considered voluntary. However, such is not the case here.

This agreement provided no guarantee that Newcombe would *not* be sent to Stillwater following the plea. Newcombe conceded this on the record. The factual basis, which under *Goulette* is a factor in assessing the voluntary nature of the plea, was sufficiently shown. The state, as Newcombe's attorney conceded, had strong evidence against him, not only the testimony of Johnson, the station attendant, and the Bronstads (Newcombe's neighbors), but also the circumstantial evidence that Newcombe was with Johnson in the gas station, that he was wearing a ski mask, that Johnson used his gun, and that Newcombe helped spend the proceeds of the robbery. The coercive effect of the threats against Newcombe was not, therefore, sufficient to invalidate the plea. Newcombe, despite his understanding he could claim his innocence while pleading guilty under *Goulette*, insisted on his intention to appeal the conviction "to prove his innocence."

■ The trial court appropriately weighed Newcombe's experience with the criminal justice system in its decision to accept the plea. *See State v. Doughman*, 340 N.W.2d 348, 353 (Minn.Ct.App.1983).

■ *Goulette* points out that since an admission of guilt is central to a plea of guilty, the argument can be made that a court should not be permitted to accept a guilty plea when the accused accompanies his plea with a denial of guilt *or with statements inconsistent with guilt* (emphasis supplied). However, the court goes on to say that there are situations where an accused may rationally plead guilty despite a personal inability to admit guilt, where legal realities dictate such a tactical decision. Such is the case here. The record establishes that there is a factual basis offered in support of the plea that would not only support a jury verdict of guilty, but would rationally compel such a verdict. It is apparent that Newcombe's stated intention to appeal was merely an additional aspect or facet of his claim of innocence; i.e. *another statement inconsistent with guilt*, but one which made his plea no less voluntary and no less intelligent.

The observation might well be made that the court's acceptance of Newcombe's plea of guilty was in Newcombe's best interest. He did, in fact, avoid commitment to Stillwater or Oak Park Heights, and other pending charges were dismissed, resulting in a lesser sentence.

## DECISION

Appellant's challenge to acceptance of his guilty plea can be raised on appeal rather than by post-conviction proceedings. The trial court did not err in accepting appellant's *Goulette* plea.

Affirmed.